IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE CATHOLIC DIOCESE OF BILOXI, INC., *et al.* | § § § | PLAINTIFFS |
| v. | § § | Civil No. 1:12CV158-HSO-RHW |
| KATHLEEN SEBELIUS, *et al.* | § § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR ORAL ARGUMENT [28], GRANTING DEFENDANTS' MOTION TO DISMISS [15], AND DISMISSING CASE WITHOUT PREJUDICE**

BEFORE THE COURT are the Motion to Dismiss [15] pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Defendants Kathleen Sebelius, Hilda Solis, Timothy Geithner, U.S. Department of Health and Human Services, U.S. Department of Labor, and U.S. Department of Treasury, on August 6, 2012, and the Motion for Oral Argument [28] filed by Plaintiffs The Catholic Diocese of Biloxi, Inc., Catholic Social and Community Services, Inc., De L'Epee Deaf Center, Inc., The Catholic Diocese of Jackson, Vicksburg Catholic School, Inc., St. Joseph Catholic School, Catholic Charities, Inc., and St. Dominic-Jackson Memorial Hospital, on October 11, 2012. Defendants' Motion to Dismiss [15] is fully briefed. Defendants have not responded to the Motion for Oral Argument [28]. With the Court's permission, the American Center for Law and Justice and Seventy-Nine Members of the United States Congress filed an *Amici Curiae* Brief [56] on November 26, 2012, in support of Plaintiffs' opposition to Defendants' Motion to Dismiss [15]. Plaintiffs [59] and Defendants [52], [57], [58], have filed Notices of

-1-

Supplemental Authority related to the pending Motion to Dismiss.

After consideration of the parties' submissions, the record, and the relevant legal authorities, and for the reasons discussed below, the Court finds that the Motion for Oral Argument [28] should be denied. Because the Defendants represent that the regulations challenged by Plaintiffs in this case are in the process of being amended, this dispute is not yet ripe for judicial review, and the Motion to Dismiss [15] should be granted. The Court will dismiss this case, without prejudice.

## I. BACKGROUND

In their Complaint [1], filed May 21, 2012, Plaintiffs describe themselves as "Catholic religious entities, which provide a wide range of spiritual, educational, social and medical services to residents, both Catholic and non-Catholic alike, throughout the State of Mississippi." Compl. [1], at ¶ 2. They state that their "work is in every respect guided by and consistent with Roman Catholic beliefs." *Id.* at ¶ 7. According to the Complaint, "artificial interference with the creation of life, including through abortion, sterilization, or contraception, is contrary to core Catholic doctrine." *Id.* at ¶ 10.

Plaintiffs contend that certain rules promulgated by Defendants as part of the 2010 Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (March 23, 2010) ["Affordable Care Act"], "would require many Catholic and other religious organizations to provide health plans to their employees that include and/or facilitate coverage for abortion-inducing drugs, sterilization, and

contraception in violation of their sincerely held religious beliefs." Compl. [1], at ¶ 11. They relate that these rules contain a "narrow exemption" for certain "religious employers," but that Plaintiffs cannot determine whether they qualify for the exemption, or whether the Government will determine that they do. *Id.* at ¶¶ 11–12. Because they provide services to persons in need, without regard to religious affiliation, Plaintiffs assert that it is unclear whether they will qualify as "religious employers" under the exemption. *Id.* at ¶ 13. Plaintiffs further object to the "intrusive, arbitrary, and misguided governmental investigation into Plaintiffs' religious missions." *Id.* at ¶ 16. They assert violations of the First Amendment of the Constitution of the United States, the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* ["RFRA"], and the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* ["APA"]. *Id.* at ¶ 18.

Plaintiffs operate six different health plans. They believe that these plans currently satisfy the Affordable Care Act's definition of a "grandfathered plan." Compl. [1], at ¶¶ 59–63. However, they allege they are now barred from altering their plans, for fear of losing the protection of their "putative grandfathered plan status." *Id.* at ¶ 65. Plaintiffs assert that they "are stuck in perpetuity with providing their current plans, and forgoing substantial modifications that may benefit their plan participants and the organization as a whole, simply to avoid compromising their core religious beliefs." *Id.* Plaintiffs fear that they "will lose their grandfathered status in the near future for reasons that cannot be avoided." *Id.* at ¶ 66.

The Complaint indicates that a temporary "safe harbor" provision has been promulgated, which provides that "[n]onprofit employers who, based on religious beliefs, do not currently provide contraceptive coverage in their insurance plan, will be provided an additional year, until August 1, 2013, to comply with the new law." Compl. [1], at ¶ 104 (quoting HHS, A Statement by U.S. Department of Health and Human Services Secretary Kathleen Sebelius, *available at* http://www.hhs.gov/news/ press/2012pres/01/20120120a.html).  However, Plaintiffs complain that they will be required to comply with the rules by the start of the next plan year following August 1, 2013.  *Id.* at ¶ 109.

The Complaint [1] charges that Defendants have violated the RFRA, the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment, and the APA, and claims that the Affordable Care Act unconstitutionally delegates legislative authority and violates the separation of powers principles of the United States Constitution.  Compl. [1], at ¶¶ 155–275.  Plaintiffs ask the Court to enter a declaratory judgment that the rules in question violate Plaintiffs' rights under RFRA and the First Amendment, and that they were promulgated in violation of the APA.  *Id.* at p. 53.  They also request an injunction prohibiting Defendants from enforcing the rules against Plaintiffs, and an order vacating the rules as to Plaintiffs.  *Id.*

Defendants now move the Court to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(1).  Defs.' Mot. to Dismiss [15], at p. 1.  They contend that Plaintiffs lack standing to pursue these claims.  Defs.' Mem. in Supp. of Mot. to Dismiss [16],

at pp. 11–14.  Defendants also argue that dismissal is warranted because this dispute is not yet ripe for judicial review.  *Id.* at pp. 15–22.

## II.  DISCUSSION

A.   Motion for Oral Argument [28]

Defendants filed their Motion to Dismiss [15] on August 6, 2012.  Plaintiffs filed their Response [22] and supporting Memorandum [23] on August 27, 2012.  Defendants filed their Rebuttal [27] on September 24, 2012.  None of these documents requested oral argument.  On October 11, 2012, Plaintiffs filed the present Motion for Oral Argument [28].  They request oral argument and ask the Court to set a hearing date.  Pls.' Mot. for Oral Argument [28], at pp. 1–3.

Local Uniform Rule 7(b)(6)(A) provides that

> [t]he court will decide motions without a hearing or oral argument unless otherwise ordered by the court on its own motion or, in its discretion, upon written request made by counsel in an easily discernible manner on the face of the motion or response.

L.U. CIV. R. 7(b)(6)(A).  The Court does not find that oral argument would be necessary or helpful in resolving Defendants' Motion to Dismiss.  Accordingly, Plaintiffs' Motion for Oral Argument [28] will be denied.

B.   Motion to Dismiss [15]

Defendants contend that Plaintiffs lack standing, and that this case is not ripe for judicial review.  Defs.' Mem. in Supp. of Mot. to Dismiss [16], at pp. 11–22.  These arguments go to whether the Complaint presents an "actual controversy," a requirement imposed by Article III of the Constitution.  *See, e.g., Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008).

1.   <u>Legal Standard</u>

A motion to dismiss pursuant to Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The justiciability doctrines of standing and ripeness, which Defendants raise here, originate from the "case" or "controversy" language of Article III of the United States Constitution, *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012), and implicate this Court's subject matter jurisdiction, *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006). Plaintiffs, as the parties invoking this Court's subject matter jurisdiction, bear the burden of proof that jurisdiction exists. *Choice Inc. of Texas*, 691 F.3d at 714. The Court

> has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Id.* (citations omitted).

2.   <u>Relevant Statutory and Regulatory Framework</u>

The Affordable Care Act was enacted on March 23, 2010. Section 2713 of the Act provides, in relevant part, that

> [a] group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for--
> \* \* \*
> (4)   with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph.

42 U.S.C. § 300gg-13(a)(4).

The guidelines adopted by the Health Resources and Services Administration ["HRSA"] require insurance plans to cover, as prescribed, "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." Women's Preventive Services:  Required Health Plan Coverage Guidelines, http://www.hrsa.gov/womensguidelines (last visited Dec. 18, 2012).  FDA-approved contraceptive methods include oral contraceptives, "emergency contraceptive" pills (such as "Plan B" and "Ella"), intrauterine devices, and sterilization.  FDA Office of Women's Health, Birth Control Guide, http://www.fda.gov/downloads/ForConsumers/ByAudience/ForWomen/FreePublications/UCM282014.pdf (last visited Dec. 18, 2012).

The Department of the Treasury, the Department of Labor, and the Department of Health and Human Services ["HHS"] [collectively, "the Departments"] issued their "Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act" in July 2010, effective on September 17, 2010.  Interim Final Regulations, 75 Fed. Reg. 41,726-01 (July 19, 2010).  In August 2011, the Departments issued amendments to the interim final regulations.  Amendment to the Interim Final Regulations, 76 Fed. Reg. 46,621-01 (Aug. 3, 2011).  The Amendments granted the HRSA, with respect to section 2713 of the Affordable Care Act, "additional discretion to exempt certain religious employers from the Guidelines where contraceptive services are concerned." *Id.* at 46,623.  A religious employer was defined as

> an organization that meets all of the following criteria:
> (1) The inculcation of religious values is the purpose of the organization.
> (2) The organization primarily employs persons who share the religious tenets of the organization.
> (3) The organization serves primarily persons who share the religious tenets of the organization.
> (4) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

*Id.* at 46,626; *see* 45 C.F.R. § 147.130.

In February 2012, the Departments published the Final Regulations, which finalized, without change, the Interim Final Regulations.  Final Regulations, 77 Fed. Reg. 8,725-01, 8,725 (Feb. 15, 2012).  The Final Regulations also adopted a one year temporary safe harbor from enforcement of the rules [the "Safe Harbor"] for "certain non-exempted, non-profit organizations with religious objections to covering contraceptive services whose group health plans are not grandfathered health plans . . . ."  *Id.* at 8,727–8,728.  "Before the end of the temporary enforcement safe harbor, the Departments will work with stakeholders to develop alternative ways of providing contraceptive coverage without cost sharing with respect to non-exempted, non-profit religious organizations with religious objections to such coverage."  *Id.* at 8,728.

On February 10, 2012, HHS issued a bulletin entitled "Guidance on the Temporary Enforcement Safe Harbor for Certain Employers, Group Health Plans and Group Health Insurance Issuers with Respect to the Requirement to Cover Contraceptive Services Without Cost Sharing Under Section 2713 of the Public Health Service Act, Section 715(a)(1) of the Employee Retirement Income Security Act, and Section 9815(a)(1) of the Internal Revenue Code" [the "Bulletin"].

*See* Certain Preventive Services Under the Affordable Care Act, 77 Fed. Reg. 16,501-01, 16,502 n.5 (March 21, 2012) ("The bulletin can be found at: http://cciio.cms.gov/resources/files/Files2/02102012/20120210-Preventive-Services-Bulletin.pdf.").

> The bulletin established a temporary enforcement safe harbor for group health plans sponsored by non-profit organizations that, on and after February 10, 2012, do not provide some or all of the contraceptive coverage otherwise required, consistent with any applicable State law, because of the religious beliefs of the organization (and any group health insurance coverage provided in connection with such plans). The temporary enforcement safe harbor is in effect until the first plan year that begins on or after August 1, 2013. The bulletin confirmed that all three Departments will not take any enforcement action against an employer, group health plan, or health insurance issuer that complies with the conditions of the temporary enforcement safe harbor described in the bulletin.

*Id.* at 16,502–16,503.

In March 2012, the Departments published an Advance Notice of Proposed Rulemaking ["ANPRM"], which announced the Departments' intention

> to propose amendments to regulations regarding certain preventive health services under provisions of the Patient Protection and Affordable Care Act (Affordable Care Act). The proposed amendments would establish alternative ways to fulfill the requirements of section 2713 of the Public Health Service Act and companion provisions under the Employee Retirement Income Security Act and the Internal Revenue Code when health coverage is sponsored or arranged by a religious organization that objects to the coverage of contraceptive services for religious reasons and that is not exempt under the final regulations published February 15, 2012.

*Id.* at 16,501.

The ANPRM further provides that

> [t]he Departments intend to finalize these amendments to the final

regulations such that they are effective by the end of the temporary enforcement safe harbor; that is, the amended final regulations would apply to plan years starting on or after August 1, 2013.

*Id.* at 16,503.

### 3. Analysis

#### a. Standing

Defendants contend that Plaintiffs lack standing to pursue their claims because they have not alleged a concrete actual or imminent injury caused by the operation of the preventative services coverage regulations. Defs.' Mem. in Supp. of Mot. to Dismiss [16], at p. 10. Since Plaintiffs' health plans are grandfathered, such that the regulations do not apply to them, Defendants maintain that there is no showing of the requisite injury, nor is any alleged injury fairly traceable to the challenged regulations. *Id.* at p. 11. Defendants also point to the Safe Harbor, which currently protects Plaintiffs from enforcement of the regulations, and argue that Plaintiffs cannot satisfy the imminence requirement for standing. *Id.* at p. 12. Finally, they assert that the ANPRM, which was published in the Federal Register, confirms their "intention to propose further amendments to the preventive services coverage regulations that would further accommodate the concerns of religious organizations that object to providing contraceptive coverage for religious reasons, like plaintiffs." *Id.* at p. 13 (citing 77 Fed. Reg. at 16,501). These amendments are intended to be finalized prior to the expiration of the enforcement Safe Harbor. *Id.*

Plaintiffs counter that "[t]hey are allowed to challenge the Government's regulation *prior* to enforcement to ensure that they are *never* faced with the choice

of violating their religious liberty or facing potential financial ruin." Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss [23], at p. 15 (emphasis in original).  They maintain that the regulation at issue is final, is current law, and applies to them.  *Id*.  "The Government's contention that it might amend the law in the future does not preclude Plaintiffs from challenging it now."  *Id*. at p. 17 (citing *Larson v. Valente*, 456 U.S. 228, 242 (1982); *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 537 (6th Cir. 2011)).  Plaintiffs insist that they are presently suffering actual injuries, that the Safe Harbor has not been codified in the Code of Federal Regulations and does not have the force and effect of law, that the Safe Harbor's one year delay is far too brief to make their injuries speculative, and that neither the Safe Harbor, Plaintiffs' current grandfathered status, nor the ANPRM does anything to alleviate their present injuries or make them any less imminent.  *Id*. at pp. 17–23.

Article III, § 2 of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "To state a case or controversy under Article III, a plaintiff must establish standing."  *Arizona Christian School Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  Standing is determined as of the date of the filing of the complaint.  *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005).  To establish standing,

> [f]irst, the plaintiff must have suffered an "injury in fact"–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged

> action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted).

The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.* at 561.

Because, as discussed below, the Court finds that this case is not ripe for adjudication, it need not resolve the question of Plaintiffs' standing at this time. Even if Plaintiffs possessed standing to maintain this suit, the Court would nevertheless lack subject matter jurisdiction because this matter is not ripe for review.

      b.    <u>Ripeness</u>

Defendants contend that because they have initiated rulemaking to amend the challenged preventive services regulations to accommodate religious organizations' objections to providing contraceptive coverage, this case is not ripe for judicial review. Defs.' Mem. in Supp. of Mot. to Dismiss [16], at p. 4. They claim that "the enforcement safe harbor will be in effect such that plaintiffs will not suffer hardship as a result of their failure to cover contraceptive devices." *Id.*

Plaintiffs respond that these arguments are irrelevant to seven of the ten claims they are pursuing. Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss [23], at pp. 8–9. Plaintiffs maintain that Counts III through V of the Complaint challenge the religious employer exemption, which is not subject to change, and Counts VII

through X challenge the Government's "already-past violations of the APA . . . ." *Id.* at p. 9. ACLJ likewise argue that "Plaintiffs are concretely injured by the Mandate now, regardless of the safe harbor period or the supposed accommodation." Amici Curiae Brief [19-1], at pp. 7–8. Defendants posit that "[b]ecause plaintiffs cannot know what form the final regulations will take, it is pure speculation to suggest that the amended regulations will not address these concerns as well." Defs.' Rebuttal [27], at pp. 16–17.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). "The ripeness doctrine's 'basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . .'" *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). When a case presents a dispute that is abstract or hypothetical, a court should dismiss it for lack of ripeness. *Id.* (citation omitted). "The key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quotations omitted). The Fifth Circuit Court of Appeals has explained that "[a] case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* (quotation omitted).

Because the preventive services regulations are in the process of being amended, in their present form they represent a tentative agency position.

Therefore, they are not fit for judicial review at this time. *See Catholic Diocese of Nashville v. Sebelius*, No. 3-12-0934, 2012 WL 5879796, *3-*4 (M.D. Tenn. Nov. 21, 2012), *appeal docketed*, No. 12-6590 (6th Cir. Dec. 19, 2012). "[I]t cannot be overlooked that through the ANPRM, Defendants have committed to amending the preventive services coverage regulations [before the end of the Safe Harbor] to accommodate the religious objections of organizations such as Plaintiffs." *Zubik v. Sebelius*, No. 2:12-cv-676, 2012 WL 5932977, *8 (W.D. Pa. Nov. 27, 2012); *see also Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) ("Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not more litigation posturing."). Accordingly, the Court finds that Plaintiffs have not demonstrated that their claims are ripe for adjudication. *See Wheaton College v. Sebelius*, No. 12-5273 (D.C. Cir. Dec. 18, 2012) (Order holding consolidated cases in abeyance because "the cases are not fit for review at this time"). Other district courts, considering similar claims by similarly situated plaintiffs, have reached this same conclusion. *See, e.g., Zubik*, 2012 WL 5932977, at *9; *Catholic Diocese of Nashville*, 2012 WL 5879796, at *5; *Wheaton College v. Sebelius*, - - - F. Supp. 2d - - - -, No. 12-1169, 2012 WL 3637162, *4-*7 (D.D.C. Aug. 24, 2012), *appeal docketed*, No. 12-5273 (D.C. Cir. Aug. 29, 2012); *Belmont Abbey College v. Sebelius*, - - - F. Supp. 2d - - - -, No. 11-1989, 2012 WL 2914417, *14-*15 (D.D.C. July 18, 2012), *appeal docketed*, No. 12-5291 (D.C. Cir. Sept. 14, 2012); *Nebraska ex rel. Bruning v. U.S. Dept. of Health and Human Servs.*, - - - F. Supp. 2d - - - -, No. 4:12CV3035, 2012 WL 2913402, *24 (D. Neb. July 17,

2012), *appeal docketed*, No. 12-3238 (8th Cir. Sept. 14, 2012). The Court concludes that because this dispute is not ripe, this case should be dismissed, without prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court finds that this dispute is not yet ripe for judicial review. The Court therefore lacks subject matter jurisdiction, and this case should be dismissed without prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion for Oral Argument [28] filed by Plaintiffs on October 11, 2012, is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion to Dismiss [15] filed by Defendants on August 6, 2012, is **GRANTED**, and Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 20th day of December, 2012.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE